## MAINSTREET ORGANIZATION OF REALTORS®
### RESIDENTIAL EXCLUSIVE RIGHT TO SELL MARKETING AGREEMENT

1  Re/Max Properties NW                                                    _David Lee_
2  BROKERAGE (Print Listing Office Name)                  SELLER NAME (Print)
3  Terri Tillinghast                                                          _Gail Lee_
4  MANAGING BROKER NAME (Print)                         SELLER NAME (Print)
5  _Ken Guzzetta_
6  DESIGNATED AGENT NAME (Print)

7  Seller represents and warrants that title to the property is in the name of: _Owner of Record_
8  _____ and Seller has the authority to sell the Property.

9  **1. Property:** This Agreement is between the above-mentioned Brokerage and Seller, in consideration of their acceptance of the
10  terms hereof and, efforts of Brokerage's to advertise, market, promote, and sell the real estate commonly known as:
11  Address: _322 W Sibley Ave_
12  Unit No: _____, City: _Park Ridge_
13  County: _Cook_, State: _Illinois_, Zip Code: _60068_
14  Permanent Index No.: _0926207054 0000_, hereinafter referred to as "Property."
15  Condo, Coop, or Townhome Parking Space Included: (check type) ☐ deeded space ☐ limited common element ☐ assigned: Parking Space #___

16  **2. Term and Conditions:** The term of this Agreement begins 12:01 A.M. Month: _2_ _27_ Day: _2020_
17  Year: _2020_ and terminates 11:59 P.M. Month: _August_ Day: _31_ Year: _2020_
18  ("marketing period"). Seller gives Brokerage the exclusive right to market, sell, option, or exchange the Property to qualified
19  purchasers and to share the Property with participants in the Midwest Real Estate Database, LLC, and/or any other Multiple
20  Listing Service in which Managing Broker is a participant, in accordance with the applicable rules and regulations of that Multiple
21  Listing Service. _Seller may cancell listing contract at any time_
22  _prior to entering into sale contract_
    (_DL_ _GL_) THE PARTIES UNDERSTAND AND AGREE THAT IT IS ILLEGAL FOR EITHER OF THEM TO
23  (Seller(s) Initial(s)) DISCRIMINATE AGAINST ANY PROSPECTIVE BUYER OR LESSEE ON THE BASIS OF RACE,
24  AGE, COLOR, RELIGION, SEX, ANCESTRY, ORDER OF PROTECTION STATUS, MARITAL STATUS, PHYSICAL
25  OR MENTAL HANDICAP, FAMILIAL STATUS, NATIONAL ORIGIN, SEXUAL ORIENTATION, MILITARY
26  STATUS, DISHONORABLE DISCHARGE FROM THE MILITARY SERVICE, OR ANY OTHER CLASS
27  PROTECTED BY THE ILLINOIS HUMAN RIGHTS ACT. THE PARTIES AGREE TO COMPLY WITH ALL
28  APPLICABLE FEDERAL, STATE, AND LOCAL FAIR HOUSING LAWS.

29  **3. Marketing Price:** The price shall be $ _1,599,000_
30  **4. Possession:** Possession is to be negotiated at time of sales contract.
31  **5. Seller's Designated Agent:** Managing Broker designates and Seller accepts: _Ken Guzzetta_
32  ("Seller's Designated Agent"), a licensee affiliated with Managing Broker, as the only legal agent of Seller to market and sell
33  Seller's Property. Managing Broker reserves the right to appoint additional designated agents for Seller when, in Managing
34  Broker's discretion, it is necessary. If additional designated agents are appointed, Seller shall be informed in writing within a
35  reasonable time of such appointment. Seller authorizes Seller's Designated Agent, from time to time, to allow another licensee,
36  who is not an agent of the Seller, to conduct an open house of Seller's Property or provide similar support to Designated Agent in
37  the marketing of Seller's Property. Seller understands and agrees that this Agreement is a contract for Brokerage to market and sell
38  Seller's Property and that Seller's Designated Agent is the only legal agent of Seller. Seller's Designated Agent will be primarily
39  responsible for the direct marketing and sale of Seller's Property. The duties owed to Seller as referred in the Illinois Real Estate
40  License Act of 2000, as amended, will only be owed to Seller by the Designated Agent. The Managing Broker and the Designated
41  Agent will have only those duties to the Seller as are required by statute.

42  **6. Possible Dual Agency:** The above named Designated Agent (hereinafter sometimes referred to as "Licensee") may undertake a
43  dual representation (represent both the seller or landlord and the buyer or tenant) for the sale or lease of the Property. Seller
44  acknowledges he was informed of the possibility of this type of representation. Before signing this document, Seller must read the
45  following:
46  Representing more than one party to a transaction presents a conflict of interest, since both clients may rely upon Licensee's
47  advice and the clients' respective interests may be adverse to each other. Licensee will undertake this representation only with the
48  written consent of ALL clients in the transaction. Any agreement between the clients as to a final contract price and other terms is
49  a result of negotiations between the clients acting in their own best interests and on their own behalf. Seller acknowledges that
50  Licensee has explained the implications of dual representation, including the risks involved, and understands that he has been
51  advised to seek independent advice from advisors or attorneys before signing any documents in this transaction.

52  WHAT A LICENSEE CAN DO FOR CLIENTS WHEN ACTING AS A DUAL AGENT:
53    1.  Treat all clients honestly.
54    2.  Provide information about the Property to the buyer or tenant.
55    3.  Disclose all latent material defects in the Property that are known to Licensee.

___ Managing Broker Initial                                     _KG_ Seller Initial  _GL_ Seller Initial
Address: _322 W Sibley Ave   Park Ridge   Illinois  60068_

Case 19-26797   Doc 57   Filed 03/02/20   Entered 03/02/20 15:24:20   Desc Main
Document   Page 2 of 10

4. Disclose financial qualification of the buyer or tenant to the Seller or landlord.
5. Explain real estate terms.
6. Help the buyer or tenant to arrange for Property inspections.
7. Explain closing costs and procedures.
8. Help the buyer compare financing alternatives.
9. Provide information about comparable properties that have sold so both clients may make educated decisions on what price to accept or offer.

WHAT A LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS A DUAL AGENT:
1. Confidential information that Licensee may know about the clients, without the client's permission.
2. The price or terms the seller or landlord will take other than the listing price without permission of the seller or landlord.
3. The price or terms the buyer or tenant is willing to pay without permission of the buyer or tenant.
4. A recommended or suggested price or terms the buyer or tenant should offer.
5. A recommended or suggested price or terms the seller or landlord should counter with or accept.

If Seller is uncomfortable with this disclosure and dual representation, please let Licensee know. Seller is not required to accept this section unless Seller wants to allow the Licensee to proceed as a Dual Agent in this transaction.

[X] Yes   [ ] No   (Seller(s) Initials)   By checking "Yes" and initialing, Seller acknowledges that Seller has read and understands this section and voluntarily consents to the Licensee acting as a Dual Agent (that is, to representing BOTH the Seller or landlord and the buyer or tenant) should that become necessary.

**7. Representation of Buyers:** Seller acknowledges that Seller has been informed and understands that as part of Brokerage's real estate business, Brokerage, from time to time, enters into representation agreements with buyers, and, as such, may designate certain of its licensees as exclusive buyers' representatives for the purpose of showing and negotiating the purchase of real estate listed with Brokerage or other real estate brokerage firms.

**8. Buyer Confidentiality:** Seller understands that Brokerage, Managing Broker and/or Designated Agent may have previously represented a buyer who is interested in Seller's Property. During that representation, Managing Broker and/or Designated Agent may have learned material information about the Buyer that is considered confidential. Under the law, neither Managing Broker nor Designated Agent may disclose any such confidential information to Seller even though the Managing Broker and/or Designated Agent now represent the Seller.

**9. Managing Broker's Affiliates:** Seller understands and agrees that other licensees affiliated with Brokerage, may represent the actual or prospective buyer of Seller's Property. Further, Seller understands and agrees that if the Property is sold through the efforts of a licensee affiliated with Brokerage that represents the buyer, the other licensee affiliated with Brokerage will be acting as a buyer's representative.

**10. Consent to Represent Other Sellers:** Seller understands and agrees that Brokerage, Managing Broker and Designated Agent may from time to time represent or assist other sellers who may be interested in selling their property to buyers. The Seller consents to Brokerage, Managing Broker's and Designated Agent's representation of such other sellers before, during, and after the expiration of this Exclusive Marketing Agreement and expressly waives any claims including but not limited to breach of duty or breach of contract based solely upon Brokerage, Managing Broker's or Designated Agent's representation or assistance of other sellers who may be interested in selling their property to buyers.

**11. Brokerage Fee:** Except as provided hereafter, in consideration of the obligations of the Brokerage, the Seller agrees:
(a) To pay Brokerage, at the time of closing of the sale of the property, or the initial closing of an installment contract for deed, and from the disbursement of the proceeds of said sale, compensation in the amount of, for Brokerage's services, $ _____ and/or 4 3/4 % (to be distributed 2 1/4 % plus $ 400.00 _____ of the sales price to the listing office and 2 1/2 % minus $ 400.00 _____ of the sales price to the selling office) in effecting the sale by finding a Buyer ready, willing, and able to purchase the property. If the transaction shall not be closed because of refusal, failure, or inability of the Seller to perform, the Seller shall pay the sales commission in full to Brokerage upon demand. Should a sale be in pending or contingent status at the expiration of this Agreement, Seller shall pay Brokerage the full commission set forth upon closing of said sale.
(b) To pay Brokerage the commission specified above if Brokerage procures a buyer, if the Property is sold within said time by Seller or any other person, or if the property is sold within ____60____ days from the expiration date herein to any prospect to whom the said listing information was submitted during the term of this exclusive agreement. However, Seller shall not be obligated to pay said commission if a valid, written listing agreement is entered into during the term of said protection period with another brokerage and the sale of the Property is made during the term of the subsequent listing agreement.

Special Compensation Information: _3%_ IF LISTING AGENT SELLS HIMSELF

**12. Cooperation and Compensation:** Brokerage is authorized to show the Property to prospective buyers through cooperating brokers; and Brokerage, on a case-by-case basis, may pay a part of its brokerage commission to cooperating brokerages. Brokerage is authorized, in its sole discretion, to determine with which brokerages it will cooperate and the amount of compensation that it will offer cooperating brokerages in the sale of Seller's Property. Seller acknowledges that the compensation offered to such cooperating brokerages may vary from brokerage to brokerage.

_____ Managing Broker Initial
Address: 322 SIBLEY AVE PARK RIDGE ILLINOIS 60068   Seller Initial _OL_   Seller Initial _GL_
(Page 2 of 6) Rev. 3.2017 © MAINSTREET ORGANIZATION OF REALTORS®

**13. Virtual Office Website Policy:** Brokerage operates a virtual office website ("VOW") for the purpose of marketing properties to consumers on the Internet who have established a brokerage-consumer relationship, as defined by Illinois Real Estate License Act of 2000, as amended, giving the consumer the opportunity to search for active and closed listing data, subject to Brokerage's oversight, supervision and accountability. The VOW Policy states that a VOW shall not display listings or property addresses of any seller who has affirmatively directed the brokerage to withhold the seller's listing or property address from display on the Internet. A VOW may allow third parties to write comments or reviews about particular listings or display a hyperlink to such comments or review in immediate conjunction with particular listings or display an automated estimate of the market value of the listing (or hyperlink to such estimate) in immediate conjunction with the listing. The Policy allows the Brokerage to disable or discontinue, at Seller's request, either or both of the aforementioned VOW features (display of listing and display of listing address and ability to make comments or display estimate of market value).

**WITH REGARD TO THE VOW POLICY, SELLER HEREBY DIRECTS BROKERAGE AS FOLLOWS** (Initial that apply):

(_____) I do NOT want the Property listing to be displayed on the Internet.
(_____) I do NOT want the Property address to be displayed on the Internet.
(_____) I do NOT give permission for comments or reviews on my listing.
(_____) I do NOT want any automated estimate of value on my listing.

Seller acknowledges that Seller has read and understands the options presented above and that, if Seller has selected the first option, consumers who conduct searches for listings on the Internet will not see information about Seller's Property in response to their search.

**14. Title Insurance and Survey:** Seller acknowledges that Seller has not added to nor disposed of any part of the Property, or gained any easements in favor of or against the Property not disclosed in the Title Guaranty Policy except as stated herein. Prior to closing, Seller agrees to furnish at Seller's expense a title insurance commitment for an Owner's Title Insurance Policy in the amount of the sale price, showing good title in the owner's name. After a sales contract has been signed, arrangements must be made to secure title insurance and schedule the closing. Seller understands that Seller is not required to use any particular title insurance company and that Seller or Seller's attorney may select any qualified licensed company for Seller's title insurance needs. Not less than one (1) business day prior to closing, except where the subject property is a condominium, Seller may be required, at Seller's expense, to furnish a Plat of Survey dated not more than six (6) months prior to the date of closing, prepared by an Illinois registered land surveyor, showing any encroachments, measurements of all lot lines, all easements of record, building set-back lines of record, fences, all building and other improvements on the real estate and distances therefrom to the nearest two lot lines. In addition, the survey to be provided shall be a boundary survey conforming to the requirements of the Illinois Department of Financial and Professional Regulation found at 68 Ill. Adm. Code, Sec. 170.56. The survey shall show all corners staked and flagged or otherwise monumented. The survey shall have the following statement prominently appearing near the professional land surveyor seal and signature: "This professional service conforms to the current Illinois minimum standards for a boundary survey. A Mortgage Inspection, as defined, is not a boundary survey, and does not satisfy the necessary requirements."

With regard to the issuance of title insurance:

☐ (_____) Seller authorizes Brokerage to order title insurance and related services on Seller's behalf through
(Seller(s) Initials) _____, an affiliate of Brokerage, for the estimated charges as disclosed in the Federal and State Disclosure Statements provided Seller by Brokerage.

☐ (_____) Seller directs that _____ provide the title insurance and
(Seller(s) Initials) related services as stated above.

☐ (_____) Seller or Seller's attorney will make the necessary arrangements for title insurance and any related services.
(Seller(s) Initials)

**15. Fixtures and Personal Property:** All of the fixtures and personal property stated herein are owned by Seller and, to the best of Seller's knowledge, are in operating condition unless otherwise noted. Seller agrees to transfer to buyer all fixtures, all heating, electrical, and plumbing systems together with the following items of personal property by Bill of Sale (Check or enumerate applicable items):

| | | | |
|---|---|---|---|
| ☒ Refrigerator | ☒ All Tacked Down Carpeting | ☐ Fireplace Screen(s)/Door(s)/Grate(s) | ☒ Central Air Conditioning |
| ☒ Oven/Range/Stove | ☒ All Window Treatments & Hardware | ☐ Fireplace Gas Logs | ☐ Electronic or Media Air Filter |
| ☒ Microwave | ☒ Built-in or Attached Shelving | ☒ Existing Storms & Screens | ☐ Central Humidifier |
| ☒ Dishwasher | ☒ Smoke Detector(s) | ☒ Carbon Monoxide Detector(s) | ☐ Security System(s) (owned) |
| ☒ Sump Pump(s) | ☒ Garbage Disposal | ☐ Ceiling Fan(s) | ☐ Intercom System |
| ☐ Water Softener (owned) | ☐ Trash Compactor | ☐ TV Antenna System | ☐ Central Vac & Equipment |
| ☐ Outdoor Shed | ☒ Washer | ☐ Window Air Conditioner(s) | ☐ Electronic Garage Door Opener(s) |
| ☐ Attached Gas Grill | ☒ Dryer | ☒ All Planted Vegetation | with _____ Transmitter(s) |
| ☒ Light Fixtures (as they exist) | ☐ Satellite Dish and System | ☐ Invisible Fence System, Collar(s) and Box | |

Other items included: _____
Items NOT included: _____
Unless otherwise agreed to in writing by Seller and Buyer, Seller shall warrant to Buyer that all fixtures, systems and personal property included in this Agreement shall be in operating condition at possession, except: _None_ _____. A system or item shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a threat to health or safety.

_____ Managing Broker Initial
Address: 322 W. SIBLEY  PARK RIDGE  ILLINOIS  60068   _____ Seller Initial   _____ Seller Initial

(Page 3 of 6) Rev. 3.2017 © MAINSTREET ORGANIZATION OF REALTORS®

**16. Home Warranty:** Seller shall agree to provide Buyer a Limited Home Warranty program from _____ _____ at a charge of $ _____. Seller acknowledges that a home warranty program is a limited warranty with a deductible. (STRIKE THROUGH IF NOT OFFERED.)

**17. Disclosure:** All inquires about this Property made directly to Seller shall be immediately referred to Managing Broker and/or Seller's Designated Agent. Seller understands that the information which Seller provides to Seller's Designated Agent as marketing information will be used to advertise Seller's Property to the public and submitted to the Multiple Listing Service. It is essential that this information be accurate and truthful. Seller agrees to comply with the provisions of the Illinois Residential Real Property Disclosure Act, the Illinois Radon Awareness Act and, if applicable, the Federal Lead Based Paint Disclosure Regulations. Seller shall complete the applicable disclosure document(s) in a timely manner, shall not knowingly provide false or inaccurate information therein, and shall comply with all local government ordinances. Although Seller is marketing Seller's Property in its present physical condition, Seller understands that Seller may be held responsible by a buyer for any latent or hidden, undisclosed defects in the Property which are known to Seller but which are not disclosed to buyer. Seller shall indemnify, save, defend and hold Brokerage, Managing Broker, and Seller's Designated Agent harmless from all claims, disputes, litigation, judgments and/or costs (including reasonable attorney's fees), whether or not frivolous, arising from any misrepresentations made by the Seller, from any incorrect information supplied by the Seller, or from any material fact concerning the Property including latent defects which the Seller fails to disclose. Further, Seller shall indemnify, save, defend, and hold Brokerage, Managing Broker, and Seller's Designated Agent harmless from any claim, loss, damage, or injury to any person or Property while viewing the Property arising from the condition of Seller's Property.

**18. Limitations:** The sole duty of the Brokerage is to effect a sale of the Property. The Brokerage, Managing Broker, Seller's Designated Agent, members of the Multiple Listing Service(s) to which the Managing Broker belongs, and the Mainstreet Organization of REALTORS® are not charged with the custody of the Property, its management, maintenance, upkeep, or repair. Illinois law allows licensees to prepare the sales contract using approved preprinted forms, but does not allow licensees to draft other legal documents required to close the sale. Therefore, the Seller agrees to draft and furnish, or have Seller's attorney draft and furnish all other legal documents necessary to close the sale.

**19. Minimum Standards:** Illinois Real Estate License Act of 2000, as amended provides that all exclusive brokerage agreements must specify that the sponsoring broker, through one or more sponsored licensees, must provide at a minimum, the following services: (1) accept delivery of and present to the client offers and counter-offers to buy, sell, or lease the client's property or the property the client seeks to purchase or lease; (2) assist the client in developing, communicating, negotiating, and presenting offers, counter offers, and notices that relate to the offers and counteroffers until a lease or purchase agreement is signed and all contingencies are satisfied or waived; and (3) answer the client's questions relating to the offers, counter-offers, notices, and contingencies.

**20. Marketing Authorization:** Brokerage is authorized to advertise, promote, and market the Property which shall include, but not be limited to, in Managing Broker's sole discretion, the display of signs, placement of the Property in any Multiple Listing Service in which Managing Broker is a participant, and promotion of the Property through any electronic medium and/or on any Internet Website to which the Brokerage, Managing Broker and/or Designated Agent may subscribe. Brokerage is authorized to affix a keybox to the Property, and provided the owner is absent, any MLS participant or subscriber associated with the Multiple Listing Service(s), whether acting as a buyer's representative or otherwise, shall have the right, through use of said keybox, to show the Property at any reasonable time. It is not a requirement of the Multiple Listing Service or Brokerage that a Seller allow use of a keybox. Seller acknowledges that neither listing nor selling brokerage, the Mainstreet Organization of REALTORS®, nor any Multiple Listing Service is an insurer against the loss of Seller's personal property. Seller is advised to safeguard or remove valuables now located on said Property. Seller is further advised to verify the existence of said valuables and obtain personal property insurance through Seller's insurance agent. Further, Seller hereby grants Brokerage and Brokerage shall have the right, and Seller acknowledges that Managing Broker may have an obligation under applicable Multiple Listing Service rules and regulations as a condition of placing Seller's Property in such Multiple Listing Service, to release information as to the amount of selling price, type of financing, and number of days to sell the Property to any Multiple Listing Service of which Managing Broker is a participant at the time the Property is sold and closed.

**21. Taxes and Assessments:** All taxes and all usually prorated expenses shall be prorated pursuant to the terms of the sales contract. Seller shall disclose any assessments or special taxes for improvements or lien for improvements, either of record or in process, applicable to the Property marketed herein, and should the Seller receive any notice thereof, Seller agrees to notify the Managing Broker or Designated Agent immediately.

(a) SPECIAL ASSESSMENTS: **Seller represents that there:** [check one] ☐ is ☒ **is not** a proposed or pending unconfirmed special assessment affecting the property not payable by Seller after the date of closing. Seller further represents that the following confirmed special assessments are not due or will be due after the date of closing: _____, 20_____ in the amount of $_____.

(b) SPECIAL SERVICE AREA: **Seller represents that the property:** [check one] ☐ is ☒ **is not** located within a Special Service Area, payments for which will not be the obligation of Seller after the date of Closing.

(c) CONDOMINIUM OR HOMEOWNERS' ASSOCIATION(S): **The property and improvements described herein** [check one] ☐ **are** ☐ **are not** part of a Condominium or Homeowners' Association. If the property is part of a Condominium or Homeowners' Association, the contact information for such association is:

Association Name:_____ Phone Number:_____
Management Company Name:_____ Phone Number:_____

_____ Managing Broker Initial _____ Seller Initial _____ Seller Initial
Address: 322 W SIBLEY AVE PARK RIDGE ILLINOIS 60068

(Page 4 of 6) Rev. 3.2017 © MAINSTREET ORGANIZATION OF REALTORS®

(d) **ASSOCIATION ASSESSMENTS/FEES:** Seller acknowledges a current Condominium or Homeowners' Association Assessment/Fee of $ _____ per _____ which includes: _____

(e) **ADDITIONAL ASSOCIATION ASSESSMENTS/FEES:** Seller further acknowledges additional assessments/fees (such as a Master Association Fee) of $ _____ per _____ which includes: _____

**22. Earnest Money (choose one):**

☒ (__/__) *Seller(s) Initials* (a) The Earnest Money shall be held by the Brokerage, as Escrowee in trust for the mutual benefit of the Buyer and Seller (hereinafter "Parties") in a manner consistent with Illinois State Law. Upon initial closing, or settlement, the Earnest Money shall be applied first to the payment of any expenses incurred by the Brokerage on Seller's behalf in the sale, and second to payment of the Brokerage's sales commission, rendering the surplus, if any, to the Seller. If a dispute arises between the Parties to a real estate transaction as to whether a default has occurred, the Escrowee shall hold the Earnest Money and implement the procedure for disbursement as agreed in writing by the Parties in the real estate contract, or pay pursuant to subsequent joint written direction to Escrowee, or as directed by a court of competent jurisdiction. Further, Seller agrees that Escrowee may deposit the funds with the clerk of the Circuit Court by an action in the nature of interpleader. Seller agrees Escrowee may be reimbursed from the Earnest Money for all costs, including reasonable attorney's fees, related to the filing of the interpleader and hereby agrees to indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorney's fees, costs, and expenses arising out of such default, claims, and demands. If Seller defaults, Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligation of this Marketing Agreement. Transfer of escrow money to the closing agent for the transaction may be made no sooner than two (2) business days prior to the scheduled closing date.

☐ (__/__) *Seller(s) Initials* (b) Brokerage maintains a policy of not holding earnest money or any moneys in escrow for any reason. At the written direction of the Parties to a real estate transaction, Earnest Money deposited by a Buyer in the transaction shall be held in trust by an Escrowee selected by Parties. Escrowee shall be duly licensed and authorized to hold money in escrow for the mutual benefit of the Parties in a manner consistent with Illinois Law. In that event, the terms of a written agreement between Escrowee and the Parties to the real estate transaction shall control all issues regarding the holding and the disbursement of Earnest Money. If Seller defaults, any refunding of the Earnest Money to Buyer at Buyer's direction shall not release Seller from the obligation of this Marketing Agreement.

**23. Amendments:** Should it be necessary to amend or modify this Agreement, facsimile signatures of all parties to this Marketing Agreement are accepted as original signatures. This Agreement may be executed in multiple copies and Seller's signature hereon acknowledges that Seller has received a signed copy.

**24. Mediation:** Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be mediated in accordance with rules then pertaining of the American Arbitration Association.

**25. Indemnification:** Seller agrees to indemnify Brokerage, Managing Broker and Designated Agent to save, defend, and hold them harmless on account of any and all loss, damage, cost, or expense (including reasonable attorney's fees) incurred by them arising out of this Agreement, or in the collection of fees or commissions due Brokerage pursuant to this Agreement, provided Brokerage is not found to be at fault.

**26. Disclaimer:** Seller acknowledges that Brokerage, Managing Broker and Seller's Designated Agent are acting solely as real estate professionals, and not as attorney, tax advisor, surveyor, structural engineer, home inspector, environmental consultant,

\_\_\_\_\_ Managing Broker Initial
Address: 322 W SIBLEY PARK RIDGE ILLINOIS 60068 Seller Initial _DA_ Seller Initial _GL_
(Page 5 of 6) Rev. 3.2017 © MAINSTREET ORGANIZATION OF REALTORS®

architect, contractor, or other professional advisor to Seller. Seller is aware that such other professional service providers are available to render advice or services to the Seller, if desired, at Seller's expense.

**27. Costs of Third-Party Services or Products:** Seller is responsible for the costs of all third-party products or services such as surveys, soil tests, title reports, well and septic tests, etc.

**28. Lease of Property:** Although the purpose of this Agreement is to bring about a sale, option, or exchange of the Property, Seller agrees to pay Brokerage a leasing commission of $ _____ if the Property is leased within the marketing period. If the tenant to whom the Property is leased later purchases the Property, Seller agrees to pay Brokerage a sales commission of _____ on the full sale price. If the property is to be marketed for lease, a separate exclusive listing agreement for lease will need to be agreed upon by the parties to this agreement.

**29. Severability:** In case any one or more provisions of this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

**30. Notice:** All notices required shall be in writing and shall be served by one party to this agreement to the other party. Notice to any one of the multiple-person party shall be sufficient notice to all. Notice shall be given in the following manner:
(a) By personal delivery of such notice; or
(b) By mailing of such notice to the addresses recited herein by regular mail and by certified mail, return receipt requested. Except as otherwise provided herein, notice served by certified mail shall be effective on the date of mailing; or
(c) By sending facsimile transmission. Notice shall be effective as of date and time of facsimile transmission, provided that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00 P.M. Chicago Time). In the event fax notice is transmitted during non-business hours, the effective date and time of notice is the first hour of the first business day after transmission; or
(d) By sending e-mail transmission. Notice shall be effective as of date and time of e-mail transmission, provided that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00 P.M. Chicago Time), and provided further that the **recipient provides written acknowledgment to the sender** of receipt of the transmission (by e-mail, facsimile, or by regular mail). In the event e-mail notice is transmitted during non-business hours, the effective date and time of notice is the first hour of the first business day after transmission; or
(e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day following deposit with the overnight delivery company.

**31. Entire Agreement:** This Agreement constitutes the complete understanding and entire agreement between the parties relating to the subject thereof, and any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Agreement. This Agreement may not be terminated or amended prior to its termination date without the express written consent of both parties to this Agreement.

Seller hereby acknowledges receipt of a signed copy of this Agreement and all attachments. The attachments include the following (HERE LIST ALL ATTACHMENTS): _____
_____

*(Signatures required of all who have a legal or equitable interest in the Property)*

Terri Tillinghast
MANAGING BROKER (print)                                      X _____
                                                              SELLER (Signature)

_____                                                 X Gail Lee
MANAGING BROKER (Signature)                                   SELLER (Signature)

DATE _____                                            CURRENT MAILING ADDRESS (Required)

_____ (signature)                                     _____
DESIGNATED AGENT (Signature)

2.27.2020                                                     _____
DATE                                                          DATE

37 S Prospect Ave
OFFICE ADDRESS

Park Ridge      IL      60068
                                                              PHONE                    FAX
847 420-7707
DESIGNATED AGENT PHONE    FAX                                 _____
                                                              E-MAIL ADDRESS
847 698-7000
OFFICE PHONE

KAGUZZETTA@GMAIL.COM
E-MAIL ADDRESS

_____ Managing Broker Initial                         DLL Seller Initial    GL Seller Initial
Address: 322 SIBLEY AVE PARK RIDGE ILLINOIS 60068

(Page 6 of 6) Rev. 3.2017 © MAINSTREET ORGANIZATION OF REALTORS®

Illinois Association of REALTORS®

# RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT



NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY SELLER CREATES LEGAL OBLIGATIONS ON SELLER THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: **322 W SIBLEY AVE**
City, State & Zip Code: **PARK RIDGE ILLINOIS 60068**
Seller's Name: **OWNER OF RECORD**

This report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of _____, 20____, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect) or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| # | YES | NO | N/A | Statement |
|---|---|---|---|---|
| 1. | X | | | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | | X | | I am aware of flooding or recurring leakage problems in the crawlspace or basement. |
| 3. | | X | | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | X | | | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | | X | | I am aware of leaks or material defects in the roof, ceilings or chimney. |
| 6. | | X | | I am aware of material defects in the walls, windows, doors or floors. |
| 7. | | X | | I am aware of material defects in the electrical system. |
| 8. | X | | | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | | | X | I am aware of material defects in the well or well equipment. |
| 10. | | X | | I am aware of unsafe conditions in the drinking water. |
| 11. | | X | | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | | X | | I am aware of material defects in the fireplace or woodburning stove. |
| 13. | | X | | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | | X | | I am aware of unsafe concentrations of radon on the premises. |
| 15. | | X | | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | | X | | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | | X | | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | | X | | I am aware of current infestations of termites or other wood boring insects. |
| 19. | | X | | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | | X | | I am aware of underground fuel storage tanks on the property. |
| 21. | | X | | I am aware of boundary or lot line disputes. |
| 22. | | X | | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |
| 23. | | X | | I am aware that this property has been used for the manufacture of methamphetamine as defined in Section 10 of the Methamphetamine Control and Community Protection Act. |

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:
**We DO NOT have a well + receive our water thru the City of Park Ridge, Basement wall has minor cracks, Basement Hot Water heater needs to be replaced, possible leak in swimming pool.**

Check here if additional pages used: ____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: X _[signature]_ Date: **2/22/2020**
Seller: X **Gail Lee** Date: **2/18/2020**

PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____ Date: _____ Time: _____
Prospective Buyer: _____ Date: _____ Time: _____

108 Effective 01/15      COPYRIGHT © BY ILLINOIS ASSOCIATION OF REALTORS®

# RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
## ARTICLE 2: DISCLOSURES
### 765 ILCS 77/5 et seq.

Section 5: As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

"Residential real property" means real property improved with not less than one nor more than four residential dwelling units; units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

"Seller" means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

"Prospective buyer" means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

Section 10. Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale-contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

Section 15. The provisions of the Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgement, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgement or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

Section 20. A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

Section 25. Liability of seller. (a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to the Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

Section 30. Disclosure supplement. If prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

Section 35. Disclosure report form. The disclosures required of a seller by this Act, shall be made in the following form: [form on reverse side]

Section 40. Material defect. If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all earnest money deposits or down payments paid by prospective buyer in the transaction. If a material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of the Act the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at the address indicated for the residential real property on the Report.

Section 45. This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

Section 50. Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

1) personal or facsimile delivery to the prospective buyer;

2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement, or

3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

For purposes of the Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

Section 55. Violations and damages. If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of the Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

Section 60. No action for violation of the Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

Buyer's initials _____ _____ (optional)




# ILLINOIS REALTORS®
## DISCLOSURE OF INFORMATION AND ACKNOWLEDGEMENT
### LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

Property Address: __322 W Sibley Ave Park Ridge ILL 60068__

**Seller's Disclosure (initial)**

__DG / GL__ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):
_____
_____

☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

__DG / GL__ (b) Records and Reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below): _____
_____

☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**

_____ (c) Purchaser has received copies of all information listed above.

_____ (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home*.

_____ (e) Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**

_____ (f) Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.

Seller X __[signature]__ Date __2/22/2020__  Purchaser _____ Date _____

Seller X __Gail Lee__ Date __2/18/2020__  Purchaser _____ Date _____

Agent __Ken Guzzetta__ Date _____  Agent _____ Date _____

(This disclosure form should be attached to the Contract to Purchase)
FORM 420 (7/28/16) COPYRIGHT ILLINOIS REALTORS®

1/1

# ILLINOIS REALTORS®
## DISCLOSURE OF INFORMATION ON RADON HAZARDS
(For Residential Real Property Sales or Purchases)



**Radon Warning Statement**

Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.

The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.

**Seller's Disclosure** (initial each of the following which applies)

_____ (a) Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).

_____ (b) Seller has provided the purchaser with the most current records and reports pertaining to elevated radon concentrations within the dwelling.

__KG__ (c) Seller either has no knowledge of elevated radon concentrations in the dwelling or prior elevated radon concentrations have been mitigated or remediated.

__KG__ (d) Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment** (initial each of the following which applies)

_____ (e) Purchaser has received copies of all information listed above.

_____ (f) Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement** (initial IF APPLICABLE)

__KG__ (g) Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

Seller X _(signed)_ Date 2/22/2020
Seller X _Gathel_ Date 2/16/2020
Purchaser _____ Date _____
Purchaser _____ Date _____
Agent _Ken Guzzetta_ Date _____
Agent _____ Date _____

Property Address: 322 W Sibley Ave
City, State, Zip Code: Park Ridge Illinois 60068

FORM 422 (7/28/16) COPYRIGHT ILLINOIS REALTORS® 1/1